CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/26/2021
JULIA C. DUDLEY, CLERK
BY: s/ C. Amos
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

|  |  |
|---|---|
| HENRY SHAFER, *Plaintiff*, | CASE NO. 6:20-cv-00044 |
| v. | MEMORANDUM OPINION |
| COMMONWEALTH OF VIRGINIA, *et al.*, *Defendants*. | JUDGE NORMAN K. MOON |

Plaintiff Henry Shafer, *pro se*, has filed a five-count complaint against Defendants Commonwealth of Virginia, "Police Department – City of Lynchburg," and Lynchburg City Police Department ("LPD") Officers M.G. Robinson (a/k/a Michael Robinson) and Adam J. Johnson. Dkt. 1. Several motions are before the Court:

1. Officers Robinson and Johnson's joint motion to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6), Dkt. 5;

2. Police Department – City of Lynchburg's motion to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6), Dkt. 12;

3. Shafer's motion for judicial notice, Dkt. 10;

4. Shafer's motions to substitute a party, Dkts. 20, 27; and

5. Shafer's motion to supplement the pleading, Dkt. 29.

The Court will construe Shafer's motion for judicial notice as a motion to supplement the pleading and will grant both motions to supplement the pleading. The Court will grant Officers Robinson and Johnson's joint motion to dismiss and Police Department – City of Lynchburg's motion to dismiss. The Court will deny Shafer's motions to amend his complaint to substitute a

party. Finally, on its own motion, the Court will dismiss the Commonwealth of Virginia as a defendant.

**ALLEGED FACTUAL BACKGROUND**

For the purposes of ruling on Defendants' motions to dismiss, the Court accepts as true the following allegations set forth in the complaint and attached exhibits.

In the early morning hours of August 15, 2018, Shafer was at the Stoney Badger Tavern in Lynchburg with his brother, Robert. Dkt. 1 ¶¶ 8–9. According to Officer Johnson's incident report, attached as an exhibit to the complaint, Robert had refused to pay his bill because it included a drink that he had not ordered. Dkt. 10-1. Shafer also refused to pay his tab. Michelle Powell, a waitress, brought Robert over to the bar to discuss the issue with Sheri Taylor, the owner. *Id.* When Taylor pointed out that Robert had ordered and consumed the drink in question, Robert accused her of lying. *Id.* Charles Pietsch, the bouncer, tried to calm the situation. *Id.* Powell, Taylor, and Pietsch repeatedly asked Robert and Shafer to leave. *Id.* When Robert turned and pushed Pietsch backwards, Pietsch struck him in the face, leaving two bleeding cuts on Robert's face and an injury to Pietsch's hand. *Id.* Shafer then turned to attack Pietsch, but Powell tried to stop him. Shafer grabbed Powell's left arm and struck her in the throat, leaving her neck red. *Id.*; *see also* Dkt. 10-2 at 8 (transcript of Officer Johnson's state trial testimony on cross-examination) ("Q. And what [Powell] had said was that Henry Shafer at some point had hit her in the neck? A. She did."). Pietsch then placed Shafer in a chokehold, rendering him temporarily unconscious. Dkt. 10-1.

When Shafer regained consciousness, he called 911. Dkt. 1 ¶ 9. Officers Johnson and Robinson responded to the call. Shafer told Officer Johnson that "his brother did not deserve to be hit." *Id.* ¶ 12; *see also* Dkt. 10-1. Officer Johnson instructed Shafer to "take a seat and that he would talk to [Shafer]" after he spoke to Robert. *Id.* ¶ 12. Officer Johnson then approached Robert,

2

who was injured and bleeding. *Id.* ¶ 10–11. He asked Robert about the altercation, and Robert responded that "he did[n't] know what happened," but that "he was in a disagreement over a drink [] and that he was hit three times for no reason." Dkt. 1 ¶ 13; *see also* Dkt. 10-1. Officer Johnson "ignored" what Robert had told him, and he never asked Shafer what had happened. Dkt. 1 ¶ 13.

Shafer also approached Officer Robinson and asked to speak with him about the incident. *Id.* ¶ 14. Officer Robinson told Shafer to "wait a minute and let him find out what is going on." *Id.* ¶ 15. Officer Robinson spoke with another officer but never spoke to Shafer about what happened, despite Shafer telling him that he had called the police. *Id.* ¶ 16.

One or both of the officers' body worn cameras recorded a Stoney Badger employee stating that Robert and Shafer each owed $50 for drinks they had consumed and showing two receipts for the unpaid amounts. Dkt. 1 ¶ 34. Neither officer collected the receipts or interviewed other bystanders. *Id.* ¶ 35; *see also* Dkt. 10-2 at 5–6.

Instead, without informing Shafer that he was being detained and arrested, Officer Robinson handcuffed Shafer, searched him, and placed him in the back of the police car. *Id.* ¶¶ 17, 22. Shafer protested, saying, "[D]on[']t put me in here," and asking, "[C]an I please talk to someone[?] My brother[']s face is bleeding." *Id.* Robinson responded, "His face is bleeding, probably because he is drunk and has a big mouth like you." *Id.* ¶ 18. However, neither Officer Robinson nor Officer Johnson ever subjected Shafer to a field sobriety test or breathalyzer test. *Id.* ¶ 20. Shafer said, "I don[']t have a big mouth[; I'm] just trying to explain there is no reason for what happened." *Id.* ¶ 19. Officer Robinson left Shafer in the back of the police car and did not return to hear his explanation. *Id.* ¶ 21. When Officer Robinson walked back into the Stoney Badger, however, he told another officer "that he [did] not know what[']s going on," as recorded by his body worn camera. *Id.* ¶ 22.

3

Officer Robinson drove Shafer to the Lynchburg Adult Detention Center, where Shafer was detained for an hour to complete the intake process. *Id.* ¶ 23. Officer Johnson spoke to a magistrate and testified under oath about his interviews with Powell and Pietsch. *Id.* ¶ 24. He did not mention speaking with Robert or any bystanders. *Id.* The magistrate issued arrest warrants for Shafer and Robert for defrauding an innkeeper, assault and battery, trespassing, and public intoxication. Dkt. 1 ¶ 24.

On March 5, 2019, Shafer was tried and convicted of defrauding an innkeeper and two counts of assault and battery in Lynchburg Circuit Court.[1]

On July 7, 2020, Shafer filed a complaint in this Court. He brought the following three claims against Officers Robinson and Johnson in their individual capacities: a negligence claim (Count 1), a claim for "deprivation of rights under color of law" (Count 2), and a claim under 42 U.S.C. § 1983 for false arrest/unlawful seizure (Count 3). *Id.* ¶¶ 29–37. He brought two additional claims against Officer Robinson in his individual capacity: a claim under 42 U.S.C. § 1983 for unreasonable search (Count 4), and a claim for unreasonable search under Virginia Code § 19.2-59 (Count 5). *Id.* ¶¶ 38–46. Shafer also named "Police Department – City of Lynchburg" and the Commonwealth of Virginia as defendants, but he did not indicate which, if any, claims he sought to bring against them.

---

[1] In reviewing a complaint pursuant to a Rule 12(b)(6) motion, a court "may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). Federal Rule of Evidence 201(b) allows courts to "judicially notice" "a fact" that is not "subject to reasonable dispute" because the fact (1) is "generally known within the trial court's territorial jurisdiction"; or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In taking judicial notice of records from prior judicial proceedings, "generally, a court will recognize only indisputable court actions, such as the entry of a guilty plea or the dismissal of a civil action." *In re Omnicare Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014). Accordingly, the Court will judicially notice Shafer's convictions in Lynchburg Circuit Court as incontrovertible matters of public record.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id*. at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Shafer is proceeding *pro se* and, thus, the Court will liberally construe his pleading. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## ANALYSIS

### A.     Claims Against Officers Robinson and Johnson

Officers Robinson and Johnson seek dismissal of all claims against them. The Court examines each claim in turn.

### 1.  Negligence (Count 1)

Shafer alleges that Officers Robinson and Johnson violated an internal LPD policy on police investigations and breached a duty to exercise "ordinary care for the safety of others." *Id.* ¶ 29.

"It is well established that the doctrine of sovereign immunity protects municipalities from tort liability arising from the exercise of governmental functions." *Niese v. Alexandria*, 564 S.E.2d 127, 132 (Va. 2002). Therefore, "[a] municipality is immune from liability for the actions of a police officer undertaken during the performance of his law enforcement duties . . . ." *Booker v. City of Lynchburg*, No. 6:20-cv-11, 2020 WL 4209057, at *10 (W.D. Va. July 22, 2020). A municipality's sovereign immunity can extend to its officers depending on:

> (1) The nature of the function performed by the employee;
> (2) The extent of the state's interest and involvement in the function;
> (3) The state's degree of control and direction over the employee; and
> (4) Whether the alleged act involved the use of judgment and discretion.

*Messina v. Burden*, 321 S.E.2d 657, 663 (Va. 1984) (citing *James v. Jane*, 267 S.E.2d 864, 869 (Va. 1980)). *See also Booker*, 2020 WL 4209057, at *5 (dismissing simple negligence claim against officers sued in their individual capacity based on Virginia's doctrine of sovereign immunity).

The conduct underlying Shafer's negligence claim involves the exercise of the City of Lynchburg's governmental function of law enforcement. Specifically, Shafer seeks to hold Officers Robinson and Johnson liable for performing their duties of investigating crimes and executing arrests. Accordingly, the City would be immune from liability for this claim.[2]

---

[2] See section B.1 below.

Because all four criteria of the Supreme Court of Virginia's test are met here with respect to Officers Robinson and Johnson, the City's sovereign immunity extends to both officers. First, Officers Robinson and Johnson were performing the function of law enforcement by carrying out their duties of investigating crimes and executing arrests. *Id.* at 664. Second, the City exercises administrative control over the LPD and over the officers as employees. Third, the City has a clear interest in its officers' enforcement of the law. Finally, investigating crimes and executing arrests require judgment and discretion. *Cromartie v. Billings*, 837 S.E.2d 247, 254 (Va. 2020) (applying test to a City of Petersburg police officer and finding that officer would have been entitled to sovereign immunity if his actions had constituted simple negligence). Thus, Officers Robinson and Johnson are entitled to sovereign immunity on Shafer's negligence claim.

Moreover, even if the officers were not entitled to sovereign immunity, Shafer has failed to state a plausible claim for negligence. "Negligence is not actionable unless there is a legal duty, a violation of the duty, and consequent damage." *Marshall v. Winston*, 389 S.E.2d 902, 904 (Va. 1990) (quoting *Fox v. Custis*, 372 S.E.2d 373, 375 (1988)) (internal quotation marks omitted). Although a police officer owes a duty to protect the public, he may only be civilly liable for violating "a special duty owed to a specific identifiable person or class of persons." *Id.* at 905 (citation omitted). In *Marshall*, the Supreme Court of Virginia found that police officers could not be held liable for negligence where the allegations had not shown "that the decedent was an identifiable person, or a member of an identifiable class of persons, to whom the defendants owed a duty distinguishable from the duty they owed to the citizenry at large." *Id.*

The same is true here. Shafer has not alleged that he was an identifiable person, or a member of an identifiable class of persons, to whom Officers Robinson and Johnson owed a special duty. Although Shafer alleges that the officers violated internal LPD policy in conducting their

investigation, Virginia law is clear that violation of an internal policy cannot establish negligence. *See Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995) (quoting *Virginia Ry. & Power Co. v. Godsey*, 83 S.E. 1072, 1073 (Va. 1915)) ("A person cannot, by the adoption of private rules, fix the standard of his duties to others. . . . [W]hether a given course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party."); *see also Pullen v. Nickens*, 310 S.E.2d 452, 456 (1983) (reaffirming *Godsey*). Without any special duty to Shafer, Officers Robinson and Johnson cannot be found liable for negligence as a matter of law.

Accordingly, the Court will dismiss Count 1 against Officers Robinson and Johnson with prejudice.

### 2.   Fourth Amendment Violations Under § 1983 (Counts 2, 3, and 4)

As an initial matter, Shafer's allegations in Count 2 do not state any claim independent of the allegations in Counts 3 and 4. Instead, Count 2 merely recites the § 1983 standard—that the defendants acted under color of state law to deprive the plaintiff of federally protected rights. Dkt. 1 ¶ 30. Accordingly, the Court will dismiss Count 2 as to Officers Robinson and Johnson with prejudice.

### i.   False Arrest/Unlawful Seizure (Count 3)

In Count 3, Shafer alleges that Officers Robinson and Johnson arrested him without a warrant and without probable cause in violation of the Fourth Amendment because they did not interview Shafer or other bystanders, disregarded Robert's statements about the circumstances that gave rise to his injuries, failed to subject Shafer to a breathalyzer or field sobriety test, and failed to collect the unpaid bar tabs as physical evidence. *Id.* ¶¶ 34–35. In addition, Officer Robinson told another officer that "he [did] not know what was going on." *Id.* ¶ 33. Officers Robinson and

Johnson contend that they are entitled to qualified immunity on Shafer's false arrest/unreasonable seizure claim. Dkt. 6 at 5–8.[3]

"Qualified immunity shields an officer from suit when []he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances []he confronted." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)) (internal quotation marks omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)). Qualified immunity asks (1) "whether a constitutional violation occurred" and (2) "whether the right violated was clearly established." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (internal quotation marks and citation omitted). But the Court need not address the questions in that order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

---

[3] Officers Robinson and Johnson also argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Shafer's claim for false arrest because granting relief on such a claim would necessarily imply the invalidity of his convictions. Dkt. 6 at 4. Most circuit courts of appeal have held that "[b]ecause an illegal search or arrest may be followed by a valid conviction, a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction. As a result, *Heck* does not generally bar such claims." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (collecting cases). "The *Heck* analysis requires a close factual examination of the underlying conviction," as *Heck* bars § 1983 claims only "if it is clear from the record" that a successful claim would necessarily imply that the plaintiff's earlier conviction was invalid. *Riddick v. Lott*, 202 F. App'x 615, 616 (4th Cir. 2006).

Because Shafer's convictions have not been reversed on direct appeal, expunged, declared invalid, or otherwise called into question in a habeas proceeding, Shafer's § 1983 claim for false arrest must be dismissed if its success would necessarily imply that his convictions for defrauding an innkeeper and assault and battery were invalid. For Shafer to prevail on his false arrest claim, the Court would need to find that Officers Robinson and Johnson lacked probable cause to arrest Shafer for either defrauding an innkeeper or assault and battery. But the record from trial at this point in the litigation is limited and includes only the excerpts of trial testimony that Shafer has attached to his complaint. *See* Dkt. 10-2. Without knowing the full circumstances surrounding Shafer's convictions, the Court cannot determine that a successful § 1983 claim for false arrest would necessarily imply the invalidity of Shafer's convictions.

A § 1983 claim for false arrest/unreasonable seizure in violation of the Fourth Amendment involves allegations that a warrantless arrest is not supported by probable cause. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. An arrest is a seizure under the Fourth Amendment and is reasonable only if it is based on probable cause. *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996). Probable cause "to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998). An officer is entitled to qualified immunity, then, if a reasonable officer in his position—and given the facts known to him at the time of arrest—would have reasonably (even if mistakenly) believed that the arrestee had committed a criminal offense. *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003).

Virginia Code § 19.2-81(G)(iii) authorizes officers to "arrest without a warrant for an alleged misdemeanor not committed in their presence involving . . . assault and battery . . . when any such arrest is based on probable cause upon reasonable complaint of the person who observed the alleged offense." And Virginia Code § 18.2-57 states that "[a]ny person who commits . . . assault and battery is guilty of a Class 1 misdemeanor." Virginia maintains the common-law definition of assault and battery. *Montague v. Commonwealth*, 684 S.E.2d 583, 588–89 (Va. 2009).

Here, a reasonable officer would have believed that the officers' decision to arrest Shafer for assault and battery was lawful given the information that Officers Robinson and Johnson

possessed at the time of arrest. Shafer attached Officer Johnson's incident report and an excerpt from the transcript of Officer Johnson's trial testimony to his complaint. *See* Dkts. 10-1; 10-2. Both exhibits show that Powell told Officer Johnson that Shafer grabbed her left arm and struck her in the throat, leaving her neck red, but not otherwise visibly injured. *See* Dkts 10-1; 10-2 at 8.[4] Given Powell's complaint, and in light of all the circumstances surrounding the incident, a reasonable officer would have had probable cause to believe that Shafer had committed misdemeanor assault and battery, and that Shafer's arrest was therefore justified.

Later that morning, a magistrate judge issued warrants for Shafer's arrest for assault and battery, among other offenses, based on Officer Johnson's testimony under oath about Powell's complaint. *See* Dkt. 1 ¶ 24. Because a magistrate judge must find probable cause that an individual has committed a crime in order to issue an arrest warrant, this allegation further supports the Court's finding that a reasonable officer would have believed that probable cause existed to justify Shafer's arrest.

Since Shafer's allegations and exhibits demonstrate that Officers Robinson and Johnson had probable cause to arrest him, Shafer fails to establish that "a constitutional violation occurred." *Henry*, 652 F.3d at 531. Even if the officers did not have probable cause to arrest Shafer, the allegations and exhibits establish that the officers acted reasonably under the known circumstances at the time of arrest. And officers are liable only for "transgressing bright lines," not for "bad guesses in gray areas." *Maciariello*, 973 F.2d at 298. Therefore, Officers Robinson and Johnson are entitled to qualified immunity on Shafer's false arrest/unreasonable seizure claim in Count 3.

---

[4] Officer Johnson also testified at trial to taking a picture of Powell's neck. *See* Dkt. 10-2 at 10–11.

Accordingly, the Court will dismiss Count 3 with prejudice as to Officers Robinson and Johnson.

### ii.    Unreasonable Search (Count 4)

In Count 4, Shafer alleges that Officer Robinson subjected him to an unreasonable search in violation of the Fourth Amendment while escorting him to the police car because Officer Robinson seized him unlawfully and lacked probable cause to believe that "evidence connected to criminal activity" was on Shafer's person. *Id.* ¶¶ 41-42. Officer Robinson contends that he is entitled to qualified immunity on Shafer's unreasonable search claim. Dkt. 6 at 10.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches." U.S. Const. amend. IV. "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. at 243–44. Although the Fourth Amendment "generally requires police to secure a warrant before conducting a search," *Maryland v. Dyson*, 527 U.S. 465, 466 (1999), "[i]t is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973). The search-incident-to-arrest exception to the warrant requirement "provides that when law enforcement officers have probable cause to make a lawful custodial arrest, they may—incident to that arrest and without a warrant—search the arrestee's person and the area within his immediate control." *United States v. Ferebee*, 957 F.3d 406, 418 (4th Cir. 2020) (internal quotation marks and citations omitted). "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does *not* depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect."

12

*Robinson*, 414 U.S. at 235 (emphasis added). Instead, if the arrest is lawful, then a search incident to that arrest is reasonable. *United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006) ("The fact of a lawful arrest, standing alone, authorizes a search.") (quoting *DeFillippo*, 443 U.S. at 35).

Contrary to Shafer's conclusory allegations, then, Officer Robinson did not need probable cause that evidence connected to criminal activity was on Shafer's person in order to search him. *See* Dkt. 1 ¶ 41. Instead, Officer Robinson is entitled to qualified immunity if he conducted his search incident to a lawful arrest. Given the Court's conclusion that a reasonable officer in Officer Robinson's position would have believed that probable cause existed to justify Shafer's arrest, the Court also concludes that Officer Robinson's search of Shafer's person incident to that arrest did not violate the Fourth Amendment under clearly established law. Therefore, Officer Robinson is entitled to qualified immunity on Shafer's unreasonable search claim in Count 4. *See also Cruey v. Huff*, No. 7:09-cv-00516, ECF 106, at 13 n.3 (W.D. Va. Nov. 8, 2010) ("[I]f Deputy Kirby is entitled to qualified immunity on the claim of unlawful arrest, he will also be entitled to qualified immunity for the search incident to the arrest.").

Furthermore, even if Officer Robinson were not entitled to qualified immunity, Shafer's conclusory allegations that he was "unreasonably searched" both misstate the applicable law, *see id.* ¶ 41, and lack factual support, *see id.* ¶¶ 17, 22, 38–40, 42. Thus, Shafer fails to state a plausible claim for an unreasonable search under § 1983.

Accordingly, the Court will dismiss Count 4 with prejudice as to Officer Robinson.

### 3.   Unreasonable Search Under Virginia Code § 19.2-59 (Count 5)

Shafer asserts a claim against Officer Robinson challenging the same search as violating Virginia Code § 19.2-59. Dkt. 1 ¶¶ 43–46.

The Supreme Court of Virginia has held that Virginia Code § 19.2-59[5] concerns a "common law tort that has achieved constitutional dimensions, and the statute specifies the familiar tort law remedy of damages." *Cromartie*, 837 S.E.2d at 254 (internal quotation marks and citation omitted). "Sovereign immunity . . . applies to actions brought under section 19.2-59." *Id.* (internal quotation marks and citation omitted). Because the statute "has been consistently held to provide only the same protection as that afforded by the Fourth Amendment[,] . . . only the constitutional standard of conduct . . . should apply for purposes of determining sovereign immunity in actions brought under section 19.2-59." *Id.* (internal quotation marks and citation omitted). As discussed above, when the four-part test established by the Supreme Court of Virginia is met, sovereign immunity protects officers for the tort of simple negligence. *Id.*; *see Messina*, 321 S.E.2d at 663 (citing *James*, 267 S.E.2d at 869); *Booker*, 2020 WL 4209057, at *5. If a search is performed in accordance with well-established law and does not violate the Fourth Amendment, it does not exceed simple negligence, and an officer is entitled to sovereign immunity for that search. *Cromartie*, 837 S.E.2d at 254–55 (finding that sovereign immunity did not protect officer for unlawful search claim under § 19.2-59 because it "was performed contrary to well-established law and violated [plaintiff's] Fourth Amendment rights" and thus "exceeded simple negligence").

The conduct underlying Shafer's § 19.2-59 claim involves the exercise of the City's governmental function of law enforcement. Specifically, Shafer seeks to hold Officer Robinson liable for conducting a search incident to arrest. Accordingly, the City would be immune from

---

[5] The statute states, in relevant part: "No officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer. Any officer or other person searching any place, thing or person otherwise than by virtue of and under a search warrant, shall be guilty of malfeasance in office. Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages."

liability for this claim.[6] And because all four criteria of the Supreme Court of Virginia's test are met here with respect to Officer Robinson, the City's sovereign immunity may extend to him. First, Officer Robinson was performing the function of law enforcement by searching Shafer incident to his arrest. Second, the City exercises administrative control over the LPD and over Officer Robinson as an employee. Third, the City has a clear interest in its officers' enforcement of the law. Finally, searching an arrestee requires judgment and discretion. Thus, Officer Robinson is entitled to sovereign immunity on Shafer's § 19.2-59 claim if his search did not exceed simple negligence.

It did not. As discussed above, Shafer's allegations demonstrate that Officer Robinson searched Shafer's person incident to a lawful arrest. *See Ferebee*, 957 F.3d at 418; *Currence*, 446 F.3d at 556. Because that search was performed in accordance with well-established law and did not violate the Fourth Amendment, it did not exceed simple negligence. *Cromartie*, 837 S.E.2d at 254–55. Therefore, Officer Robinson is entitled to sovereign immunity on Shafer's § 19.2-59 claim.

In addition, even if Officer Robinson were not entitled to sovereign immunity on this claim, Shafer's conclusory allegations that he was "unreasonably searched" both misstate the applicable law, *see id.* ¶ 41, and lack factual support, *see id.* ¶¶ 17, 22, 38–40, 42–46. Thus, Shafer fails to state a plausible claim for relief under Virginia Code § 19.2-59.

Accordingly, the Court will dismiss Count 5 as to Officer Robinson with prejudice.

### B.     Claims Against Police Department – City of Lynchburg

Shafer named "Police Department – City of Lynchburg" as a defendant in this case. He refers to the City of Lynchburg as a defendant on the first page of his complaint and alleges that

---

[6] See section B.3 below.

the City of Lynchburg is "a **sui juris** municipality and a 'person' under Section 1983 . . . ," Dkt. 1 ¶ 5 (emphasis in original). But Shafer did not name the City of Lynchburg in the caption nor serve it with the complaint. *See* Dkt. 8 at 2.

Moreover, the city's police department is not an entity subject to suit under § 1983 or under state law, because it is an operating division of the City of Lynchburg and thus has no legal existence separate and apart from the City. Whether a governmental body is an entity capable of being sued is a matter of state law. *Avery v. Burke County*, 660 F.2d 111, 113–14 (4th Cir. 1981) (citing Fed. R. Civ. P. 17(b)). Under Virginia law, municipal police departments are not legal entities that may be sued. *Thompson v. City of Danville*, No. 4:10-cv-00012, 2011 WL 2174536 (W.D. Va. June 3, 2011) ("Local police and sheriff's departments in Virginia are "non suis juris," meaning they simply do not have the capacity to be sued."). Accordingly, to the extent that Shafer has attempted to sue the LPD, the Court will terminate the LPD as a defendant in this action.

Even assuming Shafer had correctly named and served the City as a defendant, however, he has failed to state any claim against the City. On the face of the complaint, it is not clear whether Shafer has alleged any claims at all against the City. But because Shafer, proceeding *pro se*, is entitled to a liberal construction of his pleading, the Court examines whether Shafer has alleged facts that state a plausible claim for relief against the City. He has not.

### 1.  Negligence (Count 1)

As discussed above,[7] because the conduct underlying Count 1 involves the City's governmental function of law enforcement, the City is immune from liability for negligence.

---

[7] See section A.1.

### 2.   Fourth Amendment Violations Under § 1983 (Counts 2, 3, and 4)

A municipality cannot be held liable under § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Local governments can be sued under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. Once a plaintiff demonstrates the existence of an official policy, decision, omission, practice, or custom, the plaintiff also must show that it was the "moving force of the constitutional violation." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)) (internal quotation marks omitted).

Shafer has not stated a § 1983 claim for municipal liability against the City.[8] He does not allege facts showing that the City or the LPD had an official policy or custom that caused the alleged Fourth Amendment search and seizure violations. In fact, Shafer alleges that Officers Robinson and Johnson *deviated* from LPD policy in failing to conduct a thorough investigation. *See* Dkts. 1 ¶¶ 29, 35 (alleging that the officers "violat[ed] the clearly established Written Directive for the Lynchburg Police Department" and citing "PD17-0902 Criminal & Special Purpose Investigations") (emphasis removed). To the extent that Shafer has alleged that the officers did *not* act in accordance with one of the City's expressly adopted official policies, the City's policies could not have been the "moving force" behind the officers' alleged constitutional violations. *Milligan*, 743 F.2d at 230.

---

[8] Count 2 does not state a claim at all, but instead merely recites the § 1983 standard—that the defendants acted under color of state law to deprive the plaintiff of federally protected rights. Dkt. 1 ¶ 30.

Of course, when the events underlying Shafer's complaint occurred, Officers Robinson and Johnson were LPD employees. But a municipality is not vicariously liable for its employees' or agents' torts or constitutional violations. *Id.* at 691.

In addition, as discussed above, Shafer failed to state § 1983 claims against Officers Robinson and Johnson for false arrest/unreasonable seizure or unreasonable search in violation of the Fourth Amendment. In the absence of a predicate § 1983 claim against the individual officers, any § 1983 *Monell* claim against the City must fail. *Waybright v. Frederick Cnty.*, 528 F.3d 199, 203 (4th Cir. 2008) ("[M]unicipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages.") (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Accordingly, to the extent Shafer attempts to state § 1983 claims against the City, he fails to do so.

### 3. Unreasonable Search Under Virginia Code § 19.2-59 (Count 5)

As discussed above,[9] because the conduct underlying Count 5 involves the City's governmental function of law enforcement—and because Officer Robinson's search conformed to well-established law and did not violate Shafer's Fourth Amendment rights—the City is immune from liability for Shafer's § 19.2-59 claim.

Accordingly, to the extent that Shafer attempts to sue the City of Lynchburg, the Court will dismiss any and all counts against the City with prejudice.

---

[9] See section A.3.

### C.     Motion to Amend to Substitute Commonwealth's Attorney for the City of Lynchburg for the Commonwealth of Virginia

When a party seeks the court's leave to amend its pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has held "that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or [when] the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks and citation omitted) (emphasis in original). Amendment is futile when the complaint, as amended, would fail to state a claim upon which relief could be granted. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008); *Donaldson v. U.S. Dep't of Labor*, 930 F.2d 339, 349–50 (4th Cir. 1991).

Shafer seeks leave to amend his complaint to substitute the Commonwealth's Attorney for the City of Lynchburg for the Commonwealth of Virginia as a defendant. Dkts. 20, 27. Shafer has not provided any briefing in support of his motions to amend. Although the Commonwealth's Attorney has not been named as a defendant in the complaint, the Commonwealth's Attorney nevertheless filed an answer to the complaint. Dkt. 22.

No party asserts that Shafer has shown bad faith or that amendment would prejudice the Commonwealth's Attorney. Indeed, given the Commonwealth's Attorney's awareness of, and engagement with, Shafer's lawsuit through her filing of an answer, amending the complaint to name the Commonwealth's Attorney as a defendant almost certainly would not prejudice her. But if Shafer's complaint as amended would fail to state a claim against the Commonwealth's Attorney upon which relief could be granted, amendment would be futile. Thus, the Court examines whether Shafer has alleged any set of facts that might state a plausible claim for relief against the Commonwealth's Attorney. He has not.

Shafer's complaint does not mention the Commonwealth's Attorney, let alone allege that she or her officers or employees engaged in conduct that would give rise to a claim upon which relief could be granted. *See also id.* at 5. Even his allegation that Officers Robinson and Johnson "charg[ed] [him] falsely" does not implicate the Commonwealth's Attorney. Dkt. 1 ¶¶ 26–27. Still, Shafer has attached excerpts of the transcript from his trial in the Circuit Court for the City of Lynchburg on charges of defrauding an innkeeper and assault and battery. *See* Dkt. 10-2.

To the extent that Shafer intends these facts to raise an inference supporting a claim of malicious prosecution, such claim must fail because the Commonwealth's Attorney is entitled to sovereign immunity. *See also* Dkt. 22 at 8. The Supreme Court of Virginia has held that prosecutors have "absolute immunity . . . from civil liability for acts within the scope of their duties." *Andrews v. Ring*, 585 S.E.2d 780, 784 (2003). And "[i]n each case where a prosecutor is involved in the charging process, under Virginia law, that action is intimately connected with the prosecutor's role in judicial proceedings and the prosecutor is entitled to absolute immunity from suit for such actions." *Id.* at 785.

Even taking all allegations in the complaint as true and drawing all reasonable inferences in Shafer's favor, Shafer's allegations do not raise any right to relief against the Commonwealth's Attorney. *King*, 825 F.3d at 212. In addition, the Commonwealth's Attorney has absolute immunity from claims regarding her role in judicial proceedings, including the charging process. For these reasons, allowing Shafer to amend the complaint to name the Commonwealth's Attorney as a defendant in place of the Commonwealth of Virginia would be futile.

Accordingly, the Court will deny Shafer's motions to amend the complaint to substitute a party.

**D.      Failure to Serve Complaint on Commonwealth of Virginia**

Federal Rule of Civil Procedure 4(m) states, "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

Shafer filed his complaint on July 7, 2020. Dkt. 1. On September 15, the Clerk of Court sent Shafer a letter indicating that he had not yet served his complaint on the Commonwealth of Virginia. Dkt. 16. The letter stated that if Shafer did not notify the Clerk that he had served his complaint on the Commonwealth by October 5, 2020, the Commonwealth would "be dismissed from the suit without prejudice by Order of this Court." *Id.* On October 5, the Clerk sent Shafer a second letter informing him that he had 15 days to serve the complaint on the Commonwealth, or the Commonwealth would be dismissed from the suit. Dkt. 19. On October 13, Shafer filed his first motion to substitute party, Dkt. 20; the second motion followed on October 23, Dkt. 27.

Shafer never served the complaint on the Commonwealth of Virginia. In addition, Shafer's motions to amend his complaint to substitute the Commonwealth's Attorney for the City of Lynchburg for the Commonwealth of Virginia show that he does not intend the Commonwealth to be a defendant in this action.

Accordingly, on its own motion, and finding that Shafer has not shown good cause for his failure to serve the complaint on the Commonwealth of Virginia, the Court will dismiss this action without prejudice against the Commonwealth of Virginia.

## CONCLUSION

For the foregoing reasons, the Court will grant Officers Robinson and Johnson's motion to dismiss and Police Department – City of Lynchburg's motion to dismiss as to all counts. In addition, the Court will deny Shafer's motion to amend his complaint to substitute a party. Finally, the Court will dismiss the Commonwealth of Virginia as a defendant without prejudice.

An appropriate Order will issue.

The Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to all counsel of record and to *pro se* plaintiff.

ENTERED this __26th__ day of March, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE